**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| BEST DEALS ON TV, INC., *et al.*, | No.  C 07-1610 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket No. 4] |
| MOHTASHIM NAVEED, *et al.*, | |
| Defendants. | |

Before the Court is the plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order; Motion for an Order for Entry and Seizure by the U.S. Marshal; and Motion for an Order to Show Cause Regarding the Preliminary Injunction [Docket No. 4].  For the reasons that follow, the Court DENIES the *ex parte* motion for a temporary restraining order.  The other motions are set for an expedited hearing.

### BACKGROUND

The plaintiffs are Best Deals on TV, Inc. (Best Deals), Regalcom, Inc., 3ZNet, Inc., Sondos Fund Management, LLC, and Muhammand A. Mughal.  Plaintiff Mughal is the sole shareholder and owner of these businesses, which are located in warehouse space at 5696 Stewart Avenue, Fremont, California. The defendants are Mohtashim Naveed, Qamar Ali Khan, Asma Tullah Khan, and Mian Naeem Uddin. The defendants were at-will employees of Best Deals on TV.  Naveed and Khan[1] were also officers of Best Deals.

Plaintiff Mughal is a citizen of Pakistan who was residing in California under a work Visa. Mughal left the United States on November 17, 2006, leaving the daily operations and management of the businesses to Naveed and Khan.  Mughal has since been unable to return to the United States due to delays in renewing his Visa.  Mughal currently resides in Toronto, Canada.  3ZNet and Sondos Fund Management are no longer in operation, but still had cash assets at the time Mughal left.

---

[1]    The motions do not differentiate between the two defendants named Khan.

Mughal asserts that he was reviewing Best Deals's financial transactions via an on-line bank account on December 20, 2006, when he noticed several large, unauthorized transactions. These included large value checks written against company bank accounts and unauthorized transactions on company credit cards. On December 22, 2006, Mughal advised the defendants that he intended to hold a conference call later that day to discuss the transactions Mughal had discovered. When he called in, his calls went unanswered. In addition, his attempts to contact the defendants via their cellular telephones also went unanswered. Mughal attempted to review the bank accounts for Best Deals and Regalcom that night, but found that the passwords had been changed without his knowledge or authorization. Mughal also maintains that he has learned from friends and business associates that Naveed has claimed to have "taken over" Mughal's businesses.

On January 11, 2007, Mughal terminated the employment of the defendants. Nonetheless, Mughal contends the defendants continue to occupy the offices in Fremont. Mughal has hired Rudi L. Londt as President and Chief Executive Officer of Best Deals, effective February 10, 2007.

The plaintiffs contend that Mughal's name was forged on a Best Deals check, and drawn on a Wells Fargo bank account on December 19, 2006, in the amount of $545,000.00. The check was then deposited into Best Deals's Bank of America checking account, of which defendant Khan is a signatory. The plaintiffs assert that on January 3, 2007, Khan transferred $500,000.00 to the account of a company called "Al Kanz General Trading, LLC," located in Dubai, United Arab Emirates.

The plaintiffs maintain that in January 2007, two unauthorized IRS 1099-MICS forms were issued to Mughal. One was from Best Deals in the amount of $77,507.15, and one from 3ZNet for $52,589.68. The plaintiffs suggest this was done to hide the theft of cash assets from the two companies.

The plaintiffs state that on January 4, 2007, a transfer in the amount of $50,000.00 was made from Regalcom's Bank of America account to a company identified as "Best Deals on TV Company" via PayPal. This was done without authorization.

The plaintiffs further relate that nearly $60,000.00 of unauthorized payments were made on an American Express corporate credit card that was issued to Uddin. This happened between December

19 and 22, 2006. Two similarly unauthorized checks were cashed on company accounts. Between November 17 and December 28, 2006, $19,000.00 was removed from Sondos's business checking accounts. On December 21, 2006, a check in the amount of $35,000.00 was written on a Bank of America account for Best Deals. Mughal did not authorize these transactions.

Finally, the plaintiffs declare that former employees have informed Mughal that Naveed and Khan have severely depleted inventory held by Best Deals and Regalcom. The plaintiffs relate that this inventory amounted to approximately $2,000,000.00 as of November 2006, but Mughal has been unable to confirm the status of this inventory since the time the defendants ceased communicating with him.

Mughal states that he has been working with his banks and other financial institutions to determine the scope of the unauthorized activities since December 22, 2006. *See* Docket No. 7 (Mughal Decl. at ¶ 18).

The plaintiffs have brought a complaint against the defendants, first alleging various Racketeer Influenced and Corrupt Organizations Act (RICO) violations: money laundering in violation of 18 U.S.C. § 1956; mail fraud under 18 U.S.C. § 1341; wire fraud under 18 U.S.C. § 1343; bank fraud in violation of 18 U.S.C. § 1344; and fraud in connection with an access device under 18 U.S.C. § 1029. The plaintiffs also allege conspiracy to violate RICO under section 1962(c) and (d). The plaintiffs have also brought a number of claims under California law: misappropriation of trade secret; breach of fiduciary duty; fraud; intentional interference with prospective business advantage; negligent interference with prospective business advantage; unfair business practices; trespass to land; and trespass to chattel. *See* Docket No. 1 (Compl.). The complaint was filed on March 21, 2007. The present motions were filed the same day and received by the Court at approximately 3:30 PM.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 65 authorizes a court to enter a preliminary injunction or temporary restraining order. *See* FED. R. CIV. P. 65. The purpose of such injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be conducted. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006); *LGS Architects, Inc. v. Concordia*

*Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006). A party seeking a preliminary injunction must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Faith Ctr. Church Evangelistic Ministries v. Glover,* 462 F.3d 1194, 1201-02 (9th Cir. 2006). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *LGS Architects*, 434 F.3d at 1155; *see also Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1174 (9th Cir. 2006) (the greater the relative hardship to the moving party, the less probability of success must be shown to support the grant of a preliminary injunction). In addition, the party must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. *Associated Gen. Contractors v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991), *cert. denied*, 503 U.S. 985 (1992).

Under the sliding scale theory, a party seeking an injunction "need not demonstrate that he will succeed on the merits, but must at least show that his cause presents serious questions of law worthy of litigation." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993), *cert. denied*, 511 U.S. 1030 (1994). Additionally, in cases where the public interest may be affected, the court must consider the public interest as a factor in balancing the hardships. *Harris v. Bd. of Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004).

While a preliminary injunction will not be issued without security by the applicant under Federal Rule of Civil Procedure 65(c), a district court has wide discretion in setting the amount of a bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction. *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

The Local Rules of the Northern District of California require certain documentation to support an *ex parte* motion for a temporary restraining order. Local Rule 65-1(a) requires that

> An *ex parte* motion for a temporary restraining order must be accompanied by:
> (1) A copy of the complaint;
> (2) A separate memorandum of points and authorities in support of the motion;
> (3) The proposed temporary restraining order; and

4

      (4)    Such other documents in support of the motion which the party wishes the Court to consider.

In addition, "[u]nless relieved by order of a Judge for good cause shown, on or before the day of an *ex parte* motion for a temporary restraining order, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party." N.D. CAL. CIV. R. 65-1(b). Federal Rule of Civil Procedure 65(b) further specifies the conditions for an *ex parte* temporary restraining order, stating:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

FED. R. CIV. P. 65(b).

## ANALYSIS

The plaintiffs' have not provided notice to the defendants of this petition for a temporary restraining order. The plaintiffs contend they should be relieved of the requirement because if notified, the defendants would have time to cover the fraud, flee, and attempt further fraudulent acts. The plaintiffs also contend that providing notice would nullify the purpose of the temporary restraining order because the defendants would then have time to destroy evidence.

The difficulty with waiving the notice requirement here is the lack of immediacy as contemplated by Federal Rule of Civil Procedure 65(b). The immediacy of this situation has passed. Even as stated by the plaintiffs, the facts do not "clearly" show that "immediate" injury will result absent the issuance of an *ex parte* temporary restraining order without notice. The injuries the plaintiffs specifically point to happened in December 2006. And the plaintiffs themselves acknowledge that the defendants have been put on notice of Mughal's suspicions of serious wrongdoing since at least December 20, or 22, 2006. *See* Docket No. 4 (TRO Appl. at 9); Docket No. 7 (Mughal Decl. at ¶¶ 18A-E). Mughal contacted the defendants on December 22, 2006, and notified them that he intended to

1 conduct a conference call regarding the unauthorized transactions. The defendants refused to answer further telephone calls from Mughal as of that afternoon. By that evening, the defendants changed passwords to bank accounts. Thus, the defendants have been aware for nearly three full months that they are suspected of serious wrongdoing. Moreover, Mughal terminated the employment of the defendants by letter on January 11, 2007, also clearly indicating to them his concerns about their actions.

Accordingly, the defendants have now had nearly three months to destroy evidence and to take actions to harm the companies. To be sure, if these allegations are true, they are serious and the harm to the plaintiffs substantial. But the relative positions of the parties is not likely to change with notification, which is required to be given absent *immediate* and irreparable injury, loss, or damage. Nothing in the plaintiffs' application suggests *immediate* harm beyond what has already allegedly happened would occur before a properly noticed preliminary injunction can be heard, as required by Federal Rule of Civil Procedure 65(b).

Moreover, no explanation is proffered by the plaintiffs why they have waited nearly three months to file a complaint and seek a temporary injunction. By their own description, Mughal has been aware of the unauthorized transactions since December, and has been working with banks and financial institutions since December 22, 2006 to deal with them. But no similarly prompt steps have been taken for judicial redress. *See, e.g., Comcast of Illinois X, LLC v. Till*, 293 F. Supp. 2d 936, 938-40 (E.D. Wis. 2003) (the immediacy requirement for an *ex parte* TRO was lacking where the plaintiff waited almost four months after discovering the illegal activity of the defendant to commence an action).

While the plaintiffs present a compelling case for granting a preliminary injunction, they do not sufficiently demonstrate the necessity of an *ex part* temporary restraining order issued without notice. The stringent requirements of Rule 65(b) for issuance of an *ex parte* temporary restraining orders "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974).

Accordingly, a temporary restraining order encompassing the full requests of the plaintiffs is not warranted. Instead, only orders restraining the defendants from destroying evidence or disposing of or

6

transferring assets of the businesses without lawful authorization is appropriate at this time.

### CONCLUSION

Therefore, the plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order [Docket No. 4] is DENIED.

Given the issues involved, however, the Court will consider the plaintiffs' Motion for an Order for Entry and Seizure by the U.S. Marshal and Motion for an Order to Show Cause Regarding the Preliminary Injunction on an expedited briefing schedule. The plaintiffs are directed to hand-serve copies of their complaint and the present motions on the defendants by Monday, March 26, 2007, and provide proof of service to the Court. The defendants may file any opposition to the requested preliminary injunction by April 3, 2007. The plaintiffs may file a reply by April 6, 2007. A hearing will be scheduled for April 10, 2007, at 1 PM. If the plaintiffs do not hand-serve copies of the complaint and the motions by March 26th, the plaintiffs may notice these motions for the next available hearing date, which at the current time is May 15, 2007, at 1 PM.

IT IS SO ORDERED.

March 22, 2007

_____
Saundra Brown Armstrong
United States District Judge