**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| BEST DEALS ON TV, INC., *et al.*, | No. C 07-1610 SBA |
| Plaintiffs, | **ORDER TO SHOW CAUSE** |
| v. | [Docket No. 66] |
| MOHTASHIM NAVEED, *et al.*, | |
| Defendants. | |

Before the Court is the plaintiffs' motion for an order to show cause regarding contempt of the preliminary injunction [Docket No. 66]. For the reasons that follow, the motion is GRANTED in part, DENIED in part. The hearing scheduled on the motion for September 18, 2007, is VACATED. The defendants are ORDERED to show cause why they should not be held in contempt as discussed below, on September 25, 2007, at 1 P.M., concurrently with the hearing on the defendants' motion to dismiss.

## BACKGROUND

The plaintiffs are Best Deals on TV, Inc. (Best Deals), Regalcom, Inc., 3ZNet, Inc., Sondos Fund Management, LLC, and Muhammand A. Mughal. The defendants are Mohtashim Naveed, Qamar Ali Khan, Asmatullah Khan, Mian Naeem Uddin, Siavash Tehrani, Shaker Nakhjavani Pour, Al Kanz General Trading LLC, and TSSC FZCO.

On June 26, 2007, the plaintiffs filed an amended complaint against the defendants, alleging various Racketeer Influenced and Corrupt Organizations Act (RICO) violations, conspiracy to violate RICO, and a number of claims under California law, including misappropriation of trade secret; breach of fiduciary duty; fraud; intentional interference with prospective business advantage; negligent interference with prospective business advantage; unfair business practices; trespass to land; and trespass to chattel. *See* Docket No. 74 (Am. Compl.).

On April 12, 2007, the Court granted the plaintiffs' motion for a preliminary injunction. *See* Docket No. 38. Among other things, the Court issued the following orders:

> C. DEFENDANTS are ordered to return immediately---within 24 hours of entry of this Order---any and all business property DEFENDANTS have in their possession, including, but not limited to: security passwords, copyrights materials, customer lists, marketing materials, software and/or programming code, office keys, parking permits, identification/access cards, corporate vehicles, corporate credit cards for The Businesses, and any other property of PLAINTIFFS issued to DEFENDANTS as employees of PLAINTIFFS, or to which DEFENDANTS had access.
>
> . . . .
>
> D. PLAINTIFFS are granted possession and custody of the entire property and/or assets of The Businesses, to be held by PLAINTIFFS or PLAINTIFFS' nominee, as Custodians for the property during the entire pendency of this Order.

*Id.* at 4-5.

The plaintiffs contend the defendants have violated the Court's preliminary injunction by failing to return the following items: (1) a high definition plasma television (HDTV); (2) a Sony Vaio laptop computer; (3) hard disk drives and copies of hard drives; (4) a missing hard drive in the "shipping cage"; (5) QuickBooks accounting data; (6) US Bank statements, access cards, and transaction records; and (7) Pentium 4 microprocessors. The Court finds that an order to show cause is warranted with respect to the bank statements and access cards. The Court finds there is insufficient evidence to issue an order to show cause on the other items.

## **LEGAL STANDARDS**

Title 18 U.S.C. § 401 states:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Civil contempt is encompassed within this section. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1409 n.4 (9th Cir. 1990).

Civil contempt sanctions may serve two purposes: to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior. *See General Signal v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Because civil

1  contempt sanctions are viewed as nonpunitive and avoidable, civil contempt may be imposed in an
2  ordinary civil proceeding upon notice and an opportunity to be heard. *See United States v. Ayres*, 166
3  F.3d 991, 995 (9th Cir. 1999). Neither a jury trial nor proof beyond a reasonable doubt is required. *Id.*
4      In a civil contempt action, the moving party has the burden of showing by clear and convincing
5  evidence that the contemnors violated a specific and definite order of the court. *Federal Trade Comm'n*
6  *v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004); *Federal Trade Comm'n v.*
7  *Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). If the moving party does so, then the burden
8  shifts to the contemnors to demonstrate why they were unable to comply. *See Enforma Natural Prods.*,
9  362 F.3d at 1211; *Affordable Media*, 179 F.3d at 1239.

**ANALYSIS**

**1.  HDTV and Sony Vaio Laptop Computer**

The plaintiffs first contend that a forty-two inch HDTV and a Sony Vaio laptop computer are being wrongfully possessed by defendant Mohtashim Naveed. Naveed acknowledges possessing the television set and computer, but argues that plaintiff Mughal gave Naveed both the HDTV and the Sony Vaio laptop computer to off-set debt Mughal owed Naveed. The defendants therefore state "These two items [the HDTV and Sony laptop computer] were not 'business property' at the time the order [on the preliminary injunction] was made, because they had been given to NAVEED, and NAVEED, having negotiated the acquisition of these items with MUGHAL, did not use self-help as Plaintiffs allege." Docket No. 81, at 4. Naveed has declared under penalty of perjury that "MUGHAL has known and consented that they [the HDTV and the laptop computer] are my property since he let me have them to me in lieu of debts that BDTV owed to me." Docket No. 83, at 4 (Naveed Decl.).

There is no evidence before the Court as to the true ownership of these two items. The plaintiffs claim that Naveed admitted that the HDTV and the laptop are business assets of plaintiffs Best Deals and Regalcom, referencing correspondence by the defendants' counsel. That letter states:

> The other plasma TV and a Sony Notebook PC are in the possession of Mr. Naveed, who claims that their value is $300 for the laptop and $400 for the plasma TV. Naveed is in

3

>the possession of these items as a partial setoff against Best Deals for personal expenses incurred by Naveed on behalf of Best Deals in August of 2005. Mughal promised reimbursement of these expenses but Naveed was never reimbursed. Details of these expenses is attached. We will furnish the contemporary records shortly.

Docket No. 69, Ex. D (April 23, 2007 Letter).

The letter does not contain an admission by Naveed that the HDTV and laptop computer rightfully belong to the plaintiffs. There is no such evidence before the Court that the HDTV and the laptop are the business property of the plaintiffs and that the defendants thereby violated the order by failing to return these items. Thus, there is no clear and convincing evidence that would support a contempt finding that the defendants violated this Court's order by failing to return the HDTV and the laptop computer.

**2.     Hard Drives and Copies of Hard Drives**

The plaintiffs next maintain that the defendants have violated the Court order by refusing to return seventeen hard disk drives that were in the computers owned by the plaintiffs as of November 2006. The plaintiffs declare that when they resumed possession of the business premises on April 13, 2007, none of the hard drives found at the seventeen computer workstations were the original hard drives installed by the manufacturer. The plaintiffs' forensic computer expert, Mark Menz, inspected the computers and concluded that the original hard drives had been removed and replaced. Menz drew this conclusion because the side panels of the computer towers were off and there were missing screws.

The defendants flatly counter that they do not possess the hard drives. They also state that some of the computers' side panels were removed during operation because they were overheating and malfunctioning. They also contend that Menz's conclusion is based on the faulty assumption that the hard drives were assembled by the manufacturer. The defendants state that this is not the case---that in fact that computers were "assembled in-house and did not come pre-assembled." Docket No. 81, at 6. In addition, Naveed declares that "So far as we know, the hard drives that existed in the computers when we left the business premises on April 13, 2007 were the originals." Docket No. 83, at 6 (Naveed Decl.). Likewise, defendant Qamar Khan declares that "I am not aware of any hard drive being replaced

4

1  with a substitute hard drive unless it was defective." Docket No. 84, at 4 (Khan Decl.).

2  The plaintiffs point to the deposition of Maresa Nirwan to support their contention that the original hard drives were removed and replaced. But the Nirwan deposition does not support the claim, as Nirwan testified that he made copies of hard drives onto DVDs and CDs, not that the hard drives were replace. The evidence before the Court is therefore that the plaintiffs' computer expert believes that the original hard drives were taken and are in the possession of the defendants. This is not clear and convincing evidence the defendants have violated the preliminary injunction order by being in possession of the original hard drives, and is therefore insufficient to demonstrate contempt.

### 3. Hard Drive in the Shipping Cage

The plaintiffs allege that there is one additional missing hard drive. "This was one in the computer in the shipping 'cage' of the warehouse." Docket No. 65, at 7. The plaintiffs assert that this particular computer contained a hard drive when Mughal left the United States in November 2006, but does not contain the hard drive currently.

The defendants counter that this computer in the "shipping cage" and the hard drive associated with it are the personal property of defendant Mian Naeem Uddin. "Defendant UDDIN took the hard drive because it contained personal information and left the computer because it was obsolete." Docket No. 81, at 5. Defendant Uddin has declared the following:

> In my job I worked in what Plaintiffs have referred to as the "shipping cage." Plaintiffs' allegations that the computer they found in the shipping cage was a company computer, and that it housed the Plaintiffs' inventory data and shipment and tracking information is false. Such data was kept on the computer that was located in the office of the Warehouse Manager. It was not located in the shipping cage.
> The computer found in the shipping cage is mine. It was old and obsolete and had no value. I did not keep business data on it, only personal data. I left it at the business premises because it had no value. I brought it to the business premises to have it repaired. I remove[d] the hard drive therefrom in 2006 because it contained my personal data. That computer could never have managed inventory, shipping and tracking. It had no bar code scanner or a label printer necessary to accomplish shipping and tracking, and it was not fast or powerful enough. Those functions were part of the computer system in the Manager's office.

Docket No. 85, at 4 (Uddin Decl.).

The plaintiffs state that Uddin's claim of owning the computer and the hard drive is directly controverted by the testimony of Maresa Nirwan. Nirwan testified that the computer in "the cage" was the "company's computer." Docket No. 89, Ex. G (Nirwan Decl., 68:13-25).

Before the Court are apparently conflicting declarations. This is not clear and convincing evidence that the "shipping cage" hard drive belonged to the plaintiffs. Accordingly, the Court does not find a reason to issue a show cause order on the "shipping cage" hard drive.

### 4. QuickBooks Accounting Data

The plaintiffs' next basis for an order to show cause why the defendants should not be held in contempt is their contention that the defendants violated the order by removing and deleting data used by the plaintiffs for accounting. According to the plaintiffs, when their certified public accountant reviewed their QuickBooks accounting software for Regalcom in December 2006, it was current up to December 2006. Similarly, when the CPA viewed the data for 3ZNet in November 2006, the records were current up to that date. However, when the plaintiffs viewed the QuickBooks accounting data after April 13, 2007, the last entries for Regalcom and 3ZNet were dated 2000.

"Defendants flatly deny this allegation." Docket No. 81, at 7. They add that they "did not alter, tamper with nor destroy the information from 2001 to 2006 and had no motive to do so [because it is their belief that this records show evidence of crimes committed by Mughal]." *Id.*

There is no clear and convincing evidence that the defendants deleted or destroyed the accounting data. The plaintiffs have proffered their belief and assertion that the defendants have deleted data. But to find that the defendants in contempt, the Court would have to draw the inference that any missing data is the result of the defendants' conduct, and there is nothing to support such an inference at this time.

In their response, the plaintiffs shift the basis of their argument for contempt. Rather than contempt for destruction, the plaintiffs contend that the defendants are in contempt for having copies of the plaintiffs' financial information. The plaintiffs point out that the preliminary injunction order

6

1 requires the defendants "to return immediately---within 24 hours of entry of this Order---any and all
2 business property DEFENDANTS have in their possession. . . ." Docket No. 38. In their response to
3 the motion for an order to show cause, "Defendants acknowledge that they kept *copies* of financial
4 information of Plaintiffs, however there is nothing in the Court's Order to suggest that Defendants are
5 required to return copied information when Plaintiffs have access to it as well." Docket No. 81, at 7
6 (emphasis in original). The plaintiffs assert that the defendants have no proprietary interest in the
7 plaintiffs' businesses and therefore have no right to possess the plaintiffs' confidential accounting data,
8 copies or otherwise.

9 While it is true that the Court has found that the defendants have no proprietary interest in the
10 plaintiffs' businesses, the Court is not persuaded that the defendants' possession of copies of accounting
11 information is a clear basis for holding the defendants in contempt at this time. The parties are in active
12 litigation with numerous claims against each other related to these businesses. Given the broad scope
13 of discovery allowed by Federal Rule of Civil Procedure 26, copies of this information will have to be
14 exchanged. Thus, ordering the defendants to turn over copies of documents that they will be entitled
15 to during discovery will serve little purpose.

17 **5.  US Bank Statements, Access Cards, and Transaction Records**

18 The plaintiffs' next contention is that the defendants "have also violated the court order by
19 refusing to return all missing bank statements, access cards and transaction records." Docket No. 65,
20 at 7. The plaintiffs claim that they have discovered the existence of a new business checking account
21 opened by defendants Naveed and Khan on behalf of plaintiff Best Deals on February 14, 2007. It is
22 the plaintiffs' assertion that the defendants have refused to return the access card and bank statements
23 associated with this account.

24 The defendants do not deny having access cards related to this bank account. Neither Naveed
25 nor Khan respond to this particular allegation in their declarations. The defendants' response is limited
26 to suggesting that Mughal may request copies of the bank statement from the bank itself.

7

1    This portion of the plaintiffs' motion therefore has merit. Possession of an access card or cards

2 and bank statements belonging to plaintiff Best Deals is a violation of the Court's April 12, 2007,

3 preliminary injunction order requiring the defendants to return within 24 hours

> any and all business property DEFENDANTS have in their possession, including, but not limited to: security passwords, copyrights materials, customer lists, marketing materials, software and/or programming code, office keys, parking permits, identification/access cards, corporate vehicles, corporate credit cards for The Businesses, and any other property of PLAINTIFFS issued to DEFENDANTS as employees of PLAINTIFFS, or to which DEFENDANTS had access.

The defendants have offered no response why they did not comply with this order and therefore an order to show cause why the defendants should not be held in contempt for failing to return the access card(s) and the bank statements to the plaintiffs is appropriate. Accordingly, the defendants are ordered to show cause why they should be held in contempt on September 25, 2007.

**6.     Pentium 4 Microprocessors**

The plaintiffs' final allegation is that the defendants have violated the injunction by refusing to return dozens of Pentium 4 microprocessors. In a declaration, plaintiff Mughal states that "As part of our internet business, we often sold Pentium 4® microprocessors. These microprocessors were shipped to our business offices in packages containing both the chip and a fan. The package would then be sold as a unit. It was not our regular business practice to separate the microprocessor and the fan." Docket No. 70, at 2 (Mughal Decl.).

In their opposition to the motion, the defendants state:

> This is a false accusation. The shrink wrap cards containing the mechanical fans never held microprocessors because MUGHAL purchased microprocessors separate from the fans and kept them separately in inventory. It is standard practice to purchase microprocessors without the mechanical fans and visa versa because the processors are cheaper when bought in bulk and because their price tends to decline over time. Defendants are confident that a copy of the purchase order of these fans will show that they did not include microprocessors to begin with. This also explains when these processors were not included in the inventory that MUGHAL submitted in his original complaint, labeled "Exhibit G."

Docket No. 81, at 7-8.

The plaintiffs do not address the Pentium 4 microprocessors in their reply brief. Based on this

8

limited evidence, the Court is not in a position to make a finding that there is clear and convincing evidence the defendants have refused to return Pentium 4 microprocessors in violation of the injunction.

**7.     Attorney Fees**

As a final matter, the plaintiffs are requesting attorney fees and costs incurred in enforcing the preliminary injunction order. An award of attorneys' fees for civil contempt may be appropriate and are within the discretion of the court if the injured party presents specific evidence of actual losses directly caused by the violation of the court order. *See In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003); *General Signal Corp.*, 787 F.2d at 1380; *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994); *see also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983) (one purpose of civil contempt is "to compensate the contemnor's adversary for the injuries which result from the noncompliance"). Civil contempt need not be willful to justify a discretionary award of fees and expenses. *See Perry v. O'Donnell*, 759 F.2d 702, 705-06 (9th Cir. 1985). In determining the amount of attorneys' fees to be awarded to compensate the injured party, the Court must consider the twelve "*Kerr* factors."[1] *See General Signal Corp.*, 787 F.2d at 1380-81; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

If the Court does find the defendants in contempt after the September 25, 2007 hearing, then an award of fees and costs may be appropriate on the portion of the motion granted. If so, the plaintiffs are instructed to file an accounting of fees and costs associated with this motion within twenty-one days of the date a contempt finding is issued, and an affidavit that the sums claimed are the actual amounts spent on the motion. Thereafter, the Court may review the accounting and issue an order that the defendants

---

[1] The 12 factors discussed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

9

reimburse the plaintiffs for those expenses awarded by the Court.

### CONCLUSION

Accordingly, the plaintiffs' motion for an order to show cause regarding contempt of the preliminary injunction [Docket No. 66] is GRANTED in part, DENIED in part. The September 18, 2007 hearing date on this motion is VACATED. The defendants are ORDERED to show cause why they should not be held in contempt on September 25, 2007, at 1 P.M.

IT IS SO ORDERED.

September 1, 2007

_____
Saundra Brown Armstrong
United States District Judge