**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

BEST DEALS ON TV, INC., *et al.*,

    Plaintiffs,

v.

MOHTASHIM NAVEED, *et al.*,

    Defendants.

No. C 07-1610 SBA

**ORDER**

[Docket No. 77]

Before the Court is defendants Mohtashim Naveed, Qamar Ali Khan, Asmatullah Khan, Mian Naeem Uddin, Siavash Tehrani, Shaker Nakhjavani Pour, Al Kanz General Trading LLC, and TSSC FZCO's (collectively "defendants") motion to dismiss pursuant to Federal Rules 12(b)(1) and 12(b)(6), motion to strike, and motion for judicial notice [Docket No. 77]. The defendants contend that the two federal causes of action pleaded by the plaintiffs fail to state claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), and that absent these federal claims, the Court should decline to exercise supplemental jurisdiction over the state law claims.

After reading and considering the arguments presented by the parties, the Court finds these matters appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the motion to dismiss is GRANTED in part, DENIED in part; the motion to strike is DENIED; and the motion for judicial notice is GRANTED in part, DENIED in part.

**BACKGROUND**

The plaintiffs are Best Deals on TV, Inc. (Best Deals), Regalcom, Inc., 3ZNet, Inc., Sondos Fund Management, LLC, and Muhammad A. Mughal. On June 28, 2007, the plaintiffs filed an amended complaint against the defendants, first alleging various RICO violations, conspiracy to violate RICO, and a number of claims under California law, including misappropriation of trade secret; breach of fiduciary duty; fraud; intentional interference with prospective business advantage; negligent interference with prospective business advantage; unfair business practices; trespass to land; and

1 trespass to chattel. *See* Docket No. 74 (Am. Compl.).

2 In their papers, the parties occasionally distinguish between the "original defendants" and the "new defendants." The original defendants are Naveed, Qamar Ali Khan, Asmatullah Khan, and Uddin. The original defendants were former employees of the plaintiffs. The new defendants are Tehrani, Pour, Al Kanz, and TSSC.

**LEGAL STANDARDS**

**1. RICO**

The Racketeer Influenced and Corrupt Organizations Act provides for both criminal and civil liability. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (en banc). "The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (1994 ed. and Supp. IV), creates a civil cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Beck v. Prupis*, 529 U.S. 494, 495 (2000) (quoting section 1964(c)). Section 1962(c) "makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" *Id.* at 497. Subsection (d) of section 1962 provides that it shall be unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)" of section 1962. *Id.*

To state a civil RICO claim, a plaintiff must allege five elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, establishing that (5) the defendant caused injury to the plaintiff's business or property. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Swartz v. KPMG LLP*, 476 F.3d 756, 760-61 (9th Cir. 2007) (per curiam) ("A civil RICO claim requires allegations of the conduct of an enterprise through a pattern of racketeering activity that proximately caused injury to the plaintiff"); *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002); *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). The fifth element contains two

components: (1) a civil RICO plaintiff must show that his or her injury was proximately caused by the prohibited conduct; and (2) the plaintiff must show that he or she has suffered a concrete financial loss as opposed to merely an injury to a valuable intangible property interest. *See Chaset*, 300 F.3d at 1086-87.

The elements of a RICO claim must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1065-66 (9th Cir. 2004). In order to do so, a plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Swartz* , 476 F.3d at 765 (in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme).

**2.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Courts generally do not look outside the pleadings, including any attachments thereto, in deciding a motion to dismiss. *See United States v. LSL Biotechs.*, 379 F.3d 672, 699 (9th Cir. 2004). A document is not considered outside the complaint if it is "incorporated by reference," *i.e.*, the complaint specifically refers to the document and if its authenticity is not questioned. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the

complaint can not be saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

**ANALYSIS**

**A.   The Defendants' Motion to Dismiss**

The defendants argue that the plaintiffs have (1) failed to allege sufficient organizational structure to constitute an "enterprise"; and (2) failed to allege a "pattern of racketeering activity" to state a claim under RICO. And because the defendants maintain that the substantive RICO claim fails, they assert that it follows that a RICO conspiracy allegation cannot stand on its own. The defendants also contend that the plaintiffs have failed to sufficiently allege any predicate act under the heightened pleading requirements of Rule 9(b).

**1.   Enterprise**

The defendants maintain the plaintiffs have failed to allege a sufficient organization structure to constitute an "enterprise" for purposes of making a claim under RICO. An "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th Cir. 2007) (en banc).

In this case, the plaintiffs have alleged an associated-in-fact enterprise. The defendants rely on Ninth Circuit cases that held associated-in-fact enterprises require some kind of ascertainable organizational structure beyond whatever structure is required to engage in the pattern of illegal racketeering activity. *See, e.g., Chang v. Chen*, 80 F.3d 1293, 1295 (9th Cir. 1996) (the alleged associate-in-fact enterprise must have a sufficiently "ascertainable structure, separate and apart from the

structure inherent in the conduct of the pattern of racketeering activity"). In *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc), the Ninth Circuit has specifically overruled this requirement, holding that "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise."

In their response, the defendants contend that the plaintiffs have insufficiently alleged a "common purpose" or "ongoing organization" as set forth in *Odom*. An associated-in-fact enterprise is "'a group of person associated together for a common purpose of engaging in a course of conduct.'" *Id.* at 552 (citation omitted). To establish the existence of such an enterprise, a plaintiff must provide both evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. *Id*.

### a.   **Common Purpose**

The plaintiffs' amended complaint alleges the defendants' enterprise was/is an association-in-fact of Tehrani, Pour, Al Kanz, TSSC, Naveed, Khan, Uddin, and Asmatullah, "each of whom shared the common purpose of stealing from the BUSINESSES." Docket No. 74 (Am. Compl. at ¶ 88).

The defendants maintain that

> there has been inadequate showing by Plaintiffs that the Defendants['] acts constituted stealing, racketeering, money laundering, etc. The Plaintiffs alleges acts by Defendants but does not show, aside from conclusory statements, how these acts were criminal. For example, the acts of the ORIGINAL DEFENDANTS, as alleged, could just have easily been done to keep the Plaintiff businesses running.

Docket No. 94, at 5.

While the defendants are correct that the Court need not assume the truth of legal conclusions merely because they are cast in the form of factual allegations, whether the transfer of monies and the alleged liquidation of business assets were done for the purpose stealing from the businesses or done to provide capital to keep the businesses running is a factual dispute. A 12(b) motion tests the sufficiency of the allegations to state a claim, not the credibility of the parties' differing interpretations of the facts. The defendants' argument that their alleged conduct "could just have easily been done to keep the Plaintiff businesses running" is a dispute over how the facts should be interpreted. This is not

an argument suitable for the Court's consideration on a motion to dismiss under Rule 12(b)(6). Thus, there is no argument undermining the allegation of a common purpose.

### b. Ongoing Organization

The defendants also argue that the plaintiffs have not sufficiently demonstrated an "ongoing organization" under *Odom*. An ongoing organization is a vehicle for the commission of two or more predicate crimes. *Odom*, 486 F.3d at 552.

According to the defendants,

> Plaintiffs['] allegations against both the ORIGINAL and NEW DEFENDANTS, consist of blanket allegations of racketeering, theft, fraud, etc., but fail to allege how said acts were criminal. Although the court should give deference to Plaintiff's allegations, it need not accept them as the truth. Plaintiffs in their amended complaint fail to show how the alleged money transfers and "fraudulent" acts were unlawful.

Docket No. 94, at 5.

Again, this is a factual argument over whether the money transfers were authorized or not, and hence illegal---not the sufficiency of the pleading itself. Moreover, the amended complaint does in fact allege that the money transfers and fraudulent acts were illegal. It does so because it contends these actions were unauthorized and misappropriated funds from the businesses.

### c. Continuing Unit

The continuity requirement focuses on whether the associates' behavior was ongoing rather than isolated activity. *Odom*, 486 F.3d at 553. This continuity requirement will be analyzed in the next section dealing with an alleged pattern of racketeering activity. *Cf. United States v. Turkette*, 452 U.S. 576, 583 (1981) (evidence establishing an enterprise may coalesce with the evidence to establish a pattern of racketeering activity). As will be seen, the continuity requirement is satisfied and therefore the plaintiffs' allegation of an enterprise withstands a sufficiency of pleading analysis under Rule 12(b)(6).

### 2. Pattern of Racketeering Activity

The defendants assert that "Plaintiffs' allegations of a 'pattern of racketeering activity' must fail

because they do not meet the continuity requirement." Docket No. 79, at 13. A pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." *Odom*, 486 F.3d at 549. And as the defendants point out, "[a] pattern of activity lasting only a few months does not reflect the long term criminal conduct to which RICO was intended to apply." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992) (per curiam) (internal quotation marks omitted) (holding that a period of six months was not "substantial" enough to establish continuity).

There must be "at least two acts of racketeering activity" within ten years of one another in order to constitute a "pattern." 18 U.S.C. § 1961(5). "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are [1] related and [2] . . . 'amount to or pose a threat of continued criminal activity.'" *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

The "related to" requirement is satisfied if the alleged acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. The defendants do not appear to specifically challenge this requirement.

The second requirement of "continued criminal activity" is satisfied by allegations of either closed- or open-ended continuity.

### a. Closed-ended Continuity

Closed-ended continuity exists when there is "a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. "Continuity" generally means the scheme has been in existence for at least one year. *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996); *Religious Tech. Ctr.*, 971 F.2d at 366-67. According to the defendants, "Plaintiffs allege a pattern of activity lasting from November 2006 to January 2007." Docket No. 79, at 13. This contention appears to be directed towards the plaintiffs' original complaint. In their amended complaint, the plaintiffs allege a pattern of racketeering activity beginning in 2005 and continuing until April 2007. Hence, as alleged

7

by the plaintiffs, the defendants' alleged scheme has been in existence for well over one year and has extended over a substantial period of time.

### b.   Open-ended Continuity

Open-ended continuity requires "past conduct that by its nature projects into the future with a threat of repetition" or constitute the enterprise's "regular way of doing business." *H.J. Inc.*, 492 U.S. at 241-42; *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). The plaintiffs contend that they have sufficiently alleged both forms of open-ended continuity in paragraph 87 of their amended complaint. This reads:

> 87.   A pattern of criminal activity also exists as DEFENDANTS' multiple schemes of money laundering, mail fraud, wire fraud, bank fraud and fraud in connection with an access device have become a regular way of conducting the business of the enterprise. Even after DEFENDANTS were put on effective notice of MUGHAL's suspicions on December 20, 2006, they continued to engage in the same prohibited activities, and coordinated at least twelve further acts of money laundering. Some occurring as recently as March 20, 2007 when DEFENDANTS wired $101,000 from BEST DEALS' US Bank account to TEHRANI's bank account in Dubai. DEFENDANTS are still in unlawful possession of PLAINTIFFS' business software, hard drives, shipping data, and trade secrets which allow them to continue conducting their racketeering business.

Docket No. 74, at ¶ 87.

The defendants claim that the continuity requirement is not met because the allegations of fraud are not pleaded with sufficient particularity to meet the standards of Rule 9(b). Thus, those allegations of fraud extending into the past should not be relied upon in demonstrating continuity. As will be discussed more thoroughly, the Court finds that the plaintiffs have alleged a number of predicate acts of fraud with sufficient particularity for purposes of Rule 9(b). Some of these particular instances go back to 2005. For instance, the amended complaint alleges the following:

> During 2005, TEHRANI, AL KANZ, POUR, TSSC, NAVEED and KHAN illegally obtained $1,713,000.00 from [the plaintiffs'] BUSINESSES by falsely representing that LOCs [Letters of Credit] were owed and payable to AL KANZ, and by making unauthorized wire transfers to AL KANZ. In October 2005, NAVEED or KHAN falsely represented to MUGHAL that $798,000.00 was owed and due on an LOC to AL KANZ. Based on that false representation, MUGHAL authorized a wire transfer to AL KANZ in the amount of $798,000.00 on October 14, 2005.

Docket No. 74, at ¶ 92.

1    Accordingly, the defendants' argument on this point is not persuasive. There are, at the very
2 least, sufficient allegations of activity covering more than one year.

### i. Threat of Future Repetition

The defendants assert that "[t]his allegation [of a continued threat] has no factual basis in the pleading." Docket No. 94, at 7. The amended complaint alleges that "DEFENDANTS are still in unlawful possession of PLAINTIFFS' business software, hard drives, shipping data, and trade secrets which allow them to continue conducting their racketeering business." Docket No. 74, at ¶ 87. If this factual allegation is true, which for present purposes the Courts assumes it is, the defendants may very well repeat their alleged misconduct in the future. The plaintiffs have therefore adequately alleged this form of open-ended continuity of racketeering activity.

### ii. Regular Way of Doing Business

The plaintiffs maintain they have met their burden of pleading continuity under RICO by alleging that the defendants' conduct had become a regular way of doing business. The plaintiffs cite to *Ticor Title Insurance Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991), a case finding that plaintiffs adequately pled a pattern of racketeering activity based on three forgeries within a thirteen-month period because "[t]he frequency of the forgeries suggests that this practice had become a regular way of doing business" of the enterprise. The defendants main response to this is that they have never conceded that open-ended continuity has been established. This may be correct, but does not respond to the legal argument put forward that the plaintiffs have sufficiently alleged that the defendants' conduct was a regular way of doing business such to demonstrate a pattern of racketeering activity.

The defendants' other response is that the alleged wire transfers were made in the regular and legal course of business. This is yet again a factual dispute. The plaintiffs allege the wire transfers were illegal; the defendants contend the wire transfers were appropriate and made in the regular course of business and therefore are not racketeering activities. For purposes of examining the motion to dismiss, the Court takes all well-pleaded facts as taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). In this instance, simply because the defendants dispute the facts and have an alternative

1  explanation for them, does not mean they are not well-pleaded. Accordingly, a pattern of racketeering
2  activity has been sufficiently alleged in the plaintiffs' amended complaint.

### 3.  Pleading Predicate Acts with Particularity under Rule 9(b)

The defendants' next argument is that each of the claimed predicated acts have not been pleaded with sufficient particularity. Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity, declaring that "In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." The purpose of this rule is "so that the defendant can prepare an adequate answer from the allegations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (citation omitted). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id*. at 1401; *see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th Cir. 1991) (Rule 9(b)'s particularity requirements apply to RICO actions alleging a predicate act of fraud); *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 541 (9th Cir. 1989).

#### a.  Money Laundering (18 U.S.C. § 1956)

With respect to the first predicate act alleged by the plaintiffs, the defendants contend that the

> Plaintiffs' attempt to use § 1956 [the statute concerning money laundering] as a predicate act must fail for at least three reasons: (1) The proceeds that Plaintiffs allege was involved in the various bank transactions came from Plaintiffs' businesses and not from "some form of unlawful activity." (2) Because the proceeds came from Plaintiffs' businesses, and because Plaintiffs have not alleged that their businesses were felonious, the requirement of § 1956(c)(1) cannot be satisfied. Additionally, Plaintiffs do not allege any felony. (3) Plaintiffs do not give any evidence establishing the knowledge and specific intent of any Defendant with regard to any area in which "knowledge" and "intent" must be shown under § 1956.

Docket No. 79, at 19.

"Laundering of monetary instruments," as defined by 18 U.S.C. § 1956, may take three forms. The first requires that the person "[knows] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity," which is defined as meaning "that the person

10

knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law." 18 U.S.C. §§ 1956(a)(1), (c)(1). The second form of money laundering requires that the person transports, transmits or transfers funds "from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States." 18 U.S.C. § 1956(a)(2). The third form involves an underlying "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7). Most courts have held that allegations of money laundering must satisfy Rule 9(b)'s requirements because money laundering involves an element of fraud. *See, e.g., Stewart v. Wachowski*, 2004 WL 2980783, at \*4 (C.D. Cal. 2004); *Spitzer v. Abdelhak*, 1999 WL 1204352, at \*5 (E.D. Pa. 1999).

The defendants are arguing that because the plaintiffs' businesses are not alleged to be some form of unlawful activity, the "proceeds" that the defendants are alleged to have stolen from the businesses cannot be the basis of a money laundering claim. The defendants' arguments fail here due to their misunderstanding of what is meant by the "proceeds of some form of unlawful activity." Put simply, the plaintiffs are alleging that the defendants misappropriated funds from the plaintiffs' businesses and then laundered that money through various banks and then, for at least some of the misappropriated funds, out of the country. The "proceeds of some form of unlawful activity" is the money and/or assets alleged to have been misappropriated from the businesses, not money that was the result of unlawful activity by the plaintiffs' businesses.

Moreover, the plaintiffs repeatedly allege that the defendants used fraudulent lines of credit to misappropriate monies. The Ninth Circuit has specifically found that a fraudulently obtained line of credit is within the scope of the term "proceeds" as used in the money laundering statute. *See United States v. Estacio*, 64 F.3d 477, 480 (9th Cir. 1995).

The second argument proffered by the defendants on the sufficiency of the money laundering allegation is that the plaintiffs "do not give any evidence establishing the knowledge and specific intent of any Defendant." The Ninth Circuit has held that the requirement of specific intent for purposes of

11

1  stating a RICO claim is satisfied by alleging the existence of a scheme which was reasonably calculated
2  to deceive persons of ordinary prudence and comprehension and this intention is shown by examining
3  the scheme itself. *See Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 195-96 (9th Cir. 1987).

A review of just the first three substantive paragraphs of the plaintiffs' amended complaint on the money laundering allegation shows this standard is comfortably met:

> 92. During 2005, TEHRANI, AL KANZ, POUR, TSSC, NAVEED and KHAN illegally obtained $1,713,000.00 from [the plaintiffs'] BUSINESSES by falsely representing that LOCs [Letters of Credit] were owed and payable to AL KANZ, and by making unauthorized wire transfers to AL KANZ. In October 2005, NAVEED or KHAN falsely represented to MUGHAL that $798,000.00 was owed and due on an LOC to AL KANZ. Based on that false representation, MUGHAL authorized a wire transfer to AL KANZ in the amount of $798,000.00 on October 14, 2005. On October 21, 2005, NAVEED and KHAN made an unauthorized wire transfer to AL KANZ in the amount of $200,000.00. In November 2005, NAVEED or KHAN falsely represented to MUGHAL that $715,000.00 was owed and due on an LOC to AL KANZ. Based on that false representation, MUGHAL authorized a wire transfer to AL KANZ in the amount of $715,000.00 on November 15, 2005. DEFENDANTS knew that the proceeds from these nonexistent LOCs were procured through false representations. In part, DEFENDANTS designed the scheme in order to conceal the nature, location, source of ownership or control of the proceeds.
>
> 93. Throughout 2006, TEHRANI, AL KANZ, POUR, TSSC, NAVEED and KHAN illegally obtained $1,045,000.00 from BUSINESSES by falsely representing to MUGHAL that LOCs were owed and payable to AL KANZ, and by making unauthorized wire transfers to AL KANZ. On February 24, 2006, NAVEED and KHAN made an unauthorized wire transfer to AL KANZ in the amount of $145,000.00. On June 30, 2006, NAVEED and KHAN made an unauthorized wire transfer to AL KANZ in the amount of $700,000.00. On October 13, 2006, KHAN made an unauthorized wire transfer from 3ZNET to TSSC in the amount of $200,000.00. DEFENDANTS knew that the proceeds from these nonexistent LOCs were procured through false misrepresentation. In part, DEFENDANTS designed the scheme in order to conceal the nature, location, source of ownership or control of the proceeds.
>
> 94. On December 26, 2006, DEFENDANTS illegally obtained funds in the amount of $545,000 from a BEST DEALS Wells Fargo Bank account by forging MUGHAL's signature on the check, and then funneling that money via wire transfer into a Bank of America account to which KHAN was a signatory. DEFENDANTS knew that the proceeds of $545,000 into the Bank of America account were procured through forgery or false misrepresentation. In part, DEFENDANTS designed this transaction in order to conceal the nature, location, source of ownership or control of the proceeds.

Docket No. 74, at ¶¶ 92-94.

The plaintiffs amended complaint continues in similar fashion for eight more paragraphs

1 detailing the alleged scheme of money laundering and the defendants' knowledge and intent to engage
2 in this scheme and intent to deceive and defraud the plaintiffs, in particular, plaintiff Mughal. The
3 defendants have therefore not shown deficiencies in the plaintiffs pleading of the money laundering
4 claim.

        **b.**        **Mail Fraud (18 U.S.C. § 1341) and Wire Fraud (18 U.S.C. § 1343)**

6         The defendants next make a cursory argument that the plaintiffs' allegations of fraud are not
7 supported by evidence of specific intent on the part of the defendants. To demonstrate the predicate acts
8 of mail and wire fraud, a plaintiff must show a scheme to defraud, involving use of United States wires
9 or mail, with the specific intent to defraud. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir.
10 1997). Mail or wire fraud includes "any scheme to deprive another of money or property by means of
11 false or fraudulent pretenses, representations, or promises." *Carpenter v. United States*, 484 U.S. 19,
12 27 (1987).

13         "[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud (2) use
14 of the United States wires or causing a use of the United States wires in furtherance of the scheme; and
15 (3) specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d
16 1393, 1400 (9th Cir. 1986) (citation omitted); *see also United States v. McNeil*, 320 F.3d 1034, 1040
17 (9th Cir. 2003). "The only aspects of wire fraud that require particularized allegations are the factual
18 circumstances of the fraud itself." *Odom v. Microsoft, Inc.*, 486 F.3d 541, 554 (9th Cir. 2007) (en banc).

19         The Ninth Circuit has held that the "requirement of specific intent under the mail fraud statute
20 is satisfied by 'the existence of a scheme which was "reasonably calculated to deceive persons of
21 ordinary prudence and comprehension" and this intention is shown by examining the scheme itself.'"
22 *Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 195-96 (9th Cir. 1987). Moreover, "[t]o
23 maintain a civil RICO claim predicated on mail fraud, a plaintiff must show that the defendants' alleged
24 misconduct proximately caused the injury." *Poulos v. Ceasars World, Inc*., 379 F.3d 654, 664 (9th Cir.
25 2004) (citing cases).

26         A review of the plaintiffs' amended complaint shows that it makes specific and detailed

13

allegations with respect to both mail fraud and wire fraud. The plaintiffs' amended complaint sets forth specific dates, amounts, and particular transactions between various individuals and financial institutions. The intent to engage in mail and wire fraud is specifically alleged and is shown from the existence of the alleged scheme, which is outlined in a detailed manner. The defendants have not demonstrated insufficiencies in the pleading of either mail fraud or wire fraud.

    **c.**    **Bank Fraud (18 U.S.C. § 1344)**

As one of the alleged predicate RICO violations, the plaintiffs' amended complaint asserts that "DEFENDANTS are chargeable under 18 U.S.C. § 1344 for the racketeering activity of bank fraud based on *inter alia* the following acts." Docket No. 74, at ¶ 116. Under 18 U.S.C. § 1344:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
> (1)    to defraud a financial institution; or
> (2)    to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The plaintiffs fail to state a claim for bank fraud. Only financial institutions have standing to allege violations of bank fraud under 18 U.S.C. § 1344 as predicate acts for RICO purposes. *See, e.g., Holmes v. MBNA Am. Bank, N.A.*, 2007 WL 952017, at *1 (W.D.N.C. 2007) (in order for there to be a violation of section 1344, a financial institution must be victimized; because the plaintiff was not a financial institution, his civil RICO claim failed); *Whitehead v. Gateway Chevrolet*, 2004 WL 316413, at *6 (N.D. Ill. 2004); *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 562 (N.D. Ill. 1998) (granting motion to dismiss RICO counts predicated on bank fraud in violation of section 1344 because the plaintiffs, who were not financial institutions, lacked standing to bring RICO claims based on defendants' false statements to banks); *see also Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir. 2004) (citation omitted; emphasis in original) ("An essential element of bank fraud is 'intent to deceive *a bank* in order to obtain from it money or other property'"); *United States v. Jacobs*, 117 F.3d 82, 92 (2d Cir. 1997) ("In order for the bank fraud statute to apply, the fraud must be against the bank"). The plaintiffs make no allegation that they are financial institutions within the meaning of section 1344. This portion of the their complaint must therefore be dismissed for failure to state a claim upon which

1  relief may be granted.

2  **d.    Fraud in Connection with an Access Device**

3  Title 18 U.S.C. § 1029 deals with fraud and related activities in connection with access devices.[1] There is a problem with the plaintiffs' complaint with respect to the allegation of fraud in connection with an access device as it does not meet the pleading standards set forth by the Ninth Circuit in *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (per curiam). In that case, the court explained that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Id*. at 764-65 (citation omitted). Citing its prior opinion in *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989), the court declared that a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme. *Swartz*, 476 F.3d at 765; *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations omitted; emphasis added) (where a complaint includes allegations of fraud, Rule 9(b) requires more specificity including an account of the "time, place, and specific content of the false representations *as well as the identities of the parties to the misrepresentations*"); *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (allegations of fraud under section 1962 must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme). Applying these principles to the case before it, the *Swartz* court reasoned that "With respect to Presidio and DB, the allegations in Swartz's original complaint patently fail to comply with Rule 9(b). The complaint is shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attributes specific misconduct only to KPMG and B & W." *Id*.

---

[1] "[T]he term 'access device' means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." 18 U.S.C. § 1029(e)(1).

15

1    The same problem plagues the plaintiffs' amended complaint with regard to the allegation of fraud in connection with an access device. Each particular assertion of misconduct merely refers to "DEFENDANTS" generally. See Docket No. 74, at ¶¶ 121-128. Only once are two defendants, Naveed and Khan, identified individually. And that is only for the purpose of stating that they were no longer employees of plaintiff Best Deals when the alleged fraud in connection with an access device occurred. Otherwise, individual defendants are not identified, nor the role each is alleged to have partaken of with respect to the fraud. Accordingly, that portion of the amended complaint asserting fraud in connection with an access device does not meet Rule 9(b)'s requirement of particularity. The defendants' motion to dismiss this portion of the complaint must be granted.

**5.     RICO Conspiracy (18 U.S.C. § 1962(d))**

The defendants argue that the RICO conspiracy claim should be dismissed because the underlying RICO claims necessary to support a conspiracy claims are inadequately pled. Title 18 U.S.C. § 1962(d) makes unlawful conspiracy to violate any of the provisions of section 1962. A RICO conspiracy claim under 18 U.S.C. § 1962(d) requires adequate pleading of an underlying 18 U.S.C. § 1962(c) claim. *See Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000); *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997) ("if the section 1962(c) claim does not state an action upon which relief could ever be granted, regardless of the evidence, then the section 1962(d) [conspiracy] claim cannot be entertained"). As several of the plaintiffs' substantive RICO claims have survived the motion to dismiss, the defendants' premise for dismissing the conspiracy claim is now moot.

**B.     The Defendants' Request for Judicial Notice of the State Court Complaint and Declarations**

Along with their motion to dismiss, the defendants request that the Court take judicial notice of their state court complaint against the plaintiffs in this action and declarations submitted by the

16

defendants in prior motions.

Under Federal Rule of Evidence 201, "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Thus, a court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment. But a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citations omitted).

A court may take judicial notice of the fact that a complaint was file in state court, but cannot take notice of the facts alleged within those complaint, as such facts are "subject to reasonable dispute." *See Menjivar v. Trophy Props. IV DE, LLC*, 2006 WL 2884396, at *10 (N.D. Cal. 2006); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1102-03 (S.D. Cal. 2004) (finding it "inappropriate, on a motion to dismiss under Rule 12(b)(6), to take judicial notice of a complaint filed in another court without any indication as to the disposition of the allegations contained therein and with no agreement between the parties as to the truth of the facts alleged"). Accordingly, the Court takes notice of the fact that the defendants have filed a complaint in state court, but the allegations therein are not judicially noticed.

Likewise, with respect to the defendants' prior declarations, the Court notices the fact that such declarations have been submitted. But the content of those declarations are in dispute, and are therefore not appropriate for judicial notice under Federal Rule of Evidence 201.

**C.      The Defendants' Motion to Strike**

Finally, the defendants move to strike paragraphs 81 and 82 of the amended complaint. These paragraphs read, respectively:

> 81.     On April 12, 2007 the United States District Court for the Northern District of California issued an injunction, ordering NAVEED, KHAN, UDDIN and ASMATULLAH to vacate the BUSINESSES and to return all property to PLAINTIFFS within twenty-four hours.

17

82. Prior to vacating the BUSINESSES, DEFENDANTS concocted a scheme to ensure that they could continue their criminal enterprise, by *inter alia* doing the following:
   A. Copying the hard drives from the BUSINESSES computers and in violation of the Court's Order retaining the copy of the hard drives;
   B. In violation of the Court's Order, removing the hard drive from the BUSINESSES' computer that tracked shipments of goods;
   C. In violation of the Court's Order, deleting the recent accounting records for 3ZNET and REGALCOM; and
   D. In violation of the Court's Order, removing other property of PLAINTIFFS from the BUSINESSES including banking records.

Docket No. 74, at ¶¶ 81, 82.

The defendants argue that:

These allegations plead the fact of the court's previously ordered preliminary injunction, and then plead alleged violations of the court's order. Such allegations are irrelevant to the complaint. Plaintiffs have already noticed a motion, set for September 18, 2007 regarding these same alleged violations. They add nothing to the complaint.

Docket No. 79, at 19.

The plaintiffs counter that "these allegations are relevant to Plaintiffs' claim of a continuing threat of future racketeering activity." Docket No. 91, at 21.

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because of the limited importance of pleadings in federal court, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Where the motion involves background or historical material, it should not be granted unless the material is prejudicial to the opponent. *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). While the allegations, particularly in paragraph 82, assert a number of legal conclusions rather than facts, it is not so prejudicial to the defendants that it need be stricken from the complaint. Moreover, the defendants do make an argument that there is a threat of the defendants continuing with the alleged racketeering activity, so there is some possible bearing in these paragraphs to the plaintiffs' RICO claims. Therefore, the Court denies the motion to strike.

18

**CONCLUSION**

Accordingly, the motion to dismiss [Docket No. 77] is GRANTED in part, DENIED in part; the motion to strike is DENIED; and the motion for judicial notice is GRANTED in part, DENIED in part. Those portions of the plaintiffs' amended complaint alleging bank fraud and fraud in connection with an access device are DISMISSED without prejudice.

IT IS SO ORDERED.

September 25, 2007

_____
Saundra Brown Armstrong
United States District Judge